UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR AREVALO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PALACIOS, *et al.*,<br><br>　　　　Defendants. | Case No. 2:22-cv-00774-JDP (PC)<br><br>ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*<br><br>ECF No. 2<br><br>SCREENING ORDER THAT PLAINTIFF:<br><br>　　(1) FILE AN AMENDED COMPLAINT; OR<br><br>　　(2) STAND BY HIS COMPLAINT SUBJECT TO A RECOMMENDATION THAT IT BE DISMISSED<br><br>ECF No. 1<br><br>THIRTY-DAY DEADLINE |

　　Plaintiff Cesar Arevalo is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. He alleges that defendant prison officials violated his Eighth Amendment rights by failing to protect him against an attack and, afterwards, by delaying his access to medical attention. ECF No. 1. I find that plaintiff has not stated cognizable claims.

I will give him an opportunity to amend his complaint before recommending that it be dismissed. I will also grant his application to proceed *in forma pauperis*. ECF No. 2.

## Screening and Pleading Requirements

A federal court must screen a prisoner's complaint that seeks relief against a governmental entity, officer, or employee. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

## Analysis

Plaintiff alleges that on February 22, 2022, he was "involved in a physical altercation involving several inmates." ECF No. 1 at 8. Once back in his cell, he noticed that he was

bleeding from an apparent puncture wound in his chest, began to feel pain, and lost consciousness before waking to the sensation of his cellmate performing CPR. *Id.* at 9. Defendant correctional officers Eze and Barrios responded to the "man down" call from plaintiff's cellmate. *Id.* at 9-10. Plaintiff alleges that he reported he did not know what was wrong, but that he was visibly unable to stand, had blood on both his chest and the back of his head, and was "in so much pain . . . it was becoming difficult for him to breathe." *Id.* at 10. Defendants Eze and Barrios transported plaintiff on a gurney to be seem by defendant Jackson, a "psych tech," who stated that he appeared "just nicked" and that "his vitals seemed fine." *Id.* Jackson and several other prison officials—defendants Robinson, Palacios, King, Earls, and Chastain—questioned plaintiff about the injury and took photos for documentation. *Id.* Plaintiff stated that he was in pain and that he did not know what happened; defendants allegedly told him, "the faster you give us information, the faster you get to medical." *Id.* Plaintiff was then made to walk to the facility parking lot where he was transported to the Triage and Treatment Area ("TTA")—the prison's equivalent of the emergency room—where an unnamed nurse examined him. *Id.* at 11. The nurse ordered that he be sent to the hospital, where medical staff determined that he had "a hole" in the "right ventricle chamber" of his heart, for which he needed surgery. *Id*.

  Plaintiff claims that defendants Gorman, Eze, and Barrios violated his Eighth Amendment rights by failing to protect him from the attack. *Id.* at 12. However, he provides almost no factual allegations to support this claim. His complaint is silent with respect to the nature and circumstances of the attack, simply referring to it as "an altercation involving several inmates," and as to the specific actions that defendants failed to take that would have prevented the attack. *See id.* at 8 & 12. Such threadbare allegations are insufficient to show that any defendant was "'deliberate[ly] indifferen[t]' to a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828, (1994) (holding that a prison official's deliberate indifference to a prisoner's safety violates the Eighth Amendment).

  Plaintiff's allegations against defendants Palacios, Earl, King, Jackson, Chastain, and Robinson are similarly insufficient to state cognizable claims for failure to provide adequate medical care. ECF No. 1 at 12. "Deliberate indifference to serious medical needs of prisoners

3

constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, (1976) (internal citations omitted). Deliberate indifference is "manifested . . . when prison guards [] intentionally deny[] or delay[] access to medical care." *Id.* Although plaintiff's injuries rise to the level of a serious medical need, his allegations do not indicate that defendants intentionally denied or delayed treatment.

Indeed, his allegations suggest that defendants provided reasonably prompt medical care. Upon finding plaintiff injured, defendants Eze and Barrios took him to be evaluated by defendant Jackson, who then sent him to the TTA, where a nurse ordered his transport to the hospital. ECF No. 1 at 10-11. Plaintiff contends that the questioning to which defendants Jackson and others subjected him caused a one-and-a-half-hour delay in receiving treatment, and he highlights defendant Palacio's statement: "the faster you give us information, the faster you get to medical." *Id.* at 12. However, he alleges that defendants responded to the initial "man down" at "1920 hours," and the attached incident log shows that the nurse transported him to the hospital at "2000 hours," indicating that any delay could not have exceeded approximately forty minutes. *Id.* at 10-12, 18-20. Moreover, beyond the pain experienced during his evaluation, he fails to identify any harm caused by the alleged delay. *Shapley v. Nevada Bd. of State Com'rs*, 766 F. 2d. 404, 407 (9th Cir. 1985) ("[M]ere delay of surgery . . . is insufficient to state a claim of deliberate medical indifference . . . unless the denial was harmful.").

Plaintiff's exhibits suggest that defendant Jackson posed his questions in order to complete a "Medical Report of Injury of Unusual Occurrence," a seemingly reasonable step in responding to a prisoner's injury. ECF No. 1 at 20. Even if defendants should have provided emergency medical treatment with greater urgency, there is no indication that they appreciated the severity of plaintiff's injury or that any delay caused by questioning plaintiff might pose a substantial risk of serious harm; indeed, the allegations indicate that they believed he was not seriously injured. *Id.* at 10-11. As such, any shortcoming in their response, at most, amounts to negligence, which is not sufficient to state a claim of deliberate indifference. *See Estelle*, 429 U.S. at 105 ("An inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.").

Accordingly, plaintiff's allegations do not state a cognizable claim of deliberate indifference to serious medical needs.

I will allow plaintiff a chance to amend his complaint before recommending that this action be dismissed. If plaintiff decides to file an amended complaint, the amended complaint will supersede the current complaint. *See Lacey v. Maricopa Cnty.*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc). This means that the amended complaint will need to be complete on its face without reference to the prior pleading. *See* E.D. Cal. Local Rule 220. Once an amended complaint is filed, the current complaint no longer serves any function. Therefore, in an amended complaint, as in an original complaint, plaintiff will need to assert each claim and allege each defendant's involvement in sufficient detail. The amended complaint should be titled "First Amended Complaint" and refer to the appropriate case number. If plaintiff does not file an amended complaint, I will recommend that this action be dismissed

Accordingly, it is ordered that:

1. Plaintiff's application to proceed *in forma pauperis*, ECF No. 2, is granted.

2. Within thirty days from the service of this order, plaintiff must either file an amended complaint or advise the court he wishes stand by his current complaint. If he selects the latter option, I will recommend that this action be dismissed.

3. Failure to comply with this order may result in the dismissal of this action.

4. The clerk's office is directed to send plaintiff a complaint form.

IT IS SO ORDERED.

Dated:   December 2, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE